NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAFAEL A. CONTRERAS,<br><br>                      Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                      Defendant. | Civil Action No. 17-13145 (SDW)<br><br>**OPINION**<br><br>March 13, 2019 |

**WIGENTON,** District Judge.

Before this Court is Plaintiff Rafael Contreras' ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"). Specifically, Plaintiff appeals Administrative Law Judge Leonard Olarsch's ("ALJ Olarsch") denial of his claim for a period of disability, Disability Insurance, and Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction according to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that substantial credible evidence supports ALJ Olarsch's factual findings and his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

## I. PROCEDURAL AND FACTUAL HISTORY

### A. Procedural History

On October 7, 2013, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability as of August 26, 2013 due to neck and back pain. (Administrative Record [hereinafter Tr.] 181, 206.) Plaintiff also protectively filed a Title XVI application for SSI on March 31, 2014. (Tr. 185-93.) Plaintiff's applications were denied on February 25, 2014 and again on reconsideration on August 6, 2014. (Tr. 103, 116.) On August 11, 2014, Plaintiff requested a hearing; and on June 1, 2016, Plaintiff appeared and testified at an administrative hearing before ALJ Olarsch in Newark, New Jersey. (Tr. 40-69, 119.) Vocational Expert Jackie Wilson ("VE Wilson") also testified. (Tr. 63-68.) In his decision dated November 28, 2016, ALJ Olarsch concluded that Plaintiff was not disabled under §§ 216(i) and 223(d) of the Act from the alleged onset of disability (i.e., August 26, 2013) through the date of the ALJ's decision. (Tr. 23-34.) The ALJ also concluded that Plaintiff was not disabled under § 1614(a)(3)(A) of the Act. (Tr. 34.)

### B. Factual History

#### 1. Personal and Employment History

Plaintiff was fifty-seven years old at the alleged onset of his disability. (Tr. 77.) He has an eighth-grade education from the Dominican Republic. (Tr. 43-44.) His most recent significant employment was as a security guard in Puerto Rico. (Tr. 44.) In that position, he monitored and logged parking garage visitors, and at times assisted them in finding parking spaces. (Tr. 46.) After seven years of employment, Plaintiff alleged that he left this job in 2013 because his body could no longer withstand the work. (Tr. 44.)

**2. Medical History**

The record demonstrates that medical practitioners examined, consulted, and treated Plaintiff for the physical symptoms associated with his disability claim. The following is a summary of the evidence.

On January 15, 2014, Dr. Rashel Potashnik, M.D. ("Dr. Potashnik") conducted an orthopedic consultative examination at the request of the Social Security Administration. (Tr. 265-66.) During the exam, Plaintiff reported pain in his neck and low back, numbness and swelling in his hands, and numbness in his feet. (Tr. 265.) Dr. Potashnik noted that Plaintiff walked with a normal gait and did not use an assistive device. (*Id*.) Despite generalized tenderness in his cervical and lumbar spine, his range of motion was noted as "functional" in his lumbar spine, "preserved" in his upper extremities, and "normal" in his lower extremities. (Tr. 266.) Dr. Potashnick saw no evidence of spasms or muscle weakness, and noted that Plaintiff had normal grip and pinch strength. (Tr. 266, 270-71.)

On June 26, 2014, Plaintiff underwent a subsequent consultative orthopedic evaluation with Justin Fernando, M.D. ("Dr. Fernando"). (Tr. 272-76.) During the exam, Plaintiff reported a history of pain throughout his spine, and more recently, pain in his left shoulder and lower back. (Tr. 272.) Plaintiff walked with a normal gait and ambulated without the use of assistive devices. (Tr. 273.) He had a full range of motion, full strength, and no soft tissue abnormalities in his upper extremities, and he also had full range of motion in his lower extremities. (Tr. 272-74.) Dr. Fernando diagnosed Plaintiff with hypertension, painful left shoulder,[1] and chronic lower back pain without radicular symptoms. (Tr. 274.) According to Dr. Fernando, Plaintiff's back pain

---

[1] Dr. Fernando qualified Plaintiff's left shoulder pain, stating that there was no clinical "indication of any abnormality in structure or in function." (Tr. 274.)

3

"may be purely due to arthritic changes in the spine," and there he found "nothing clinically" to indicate severe restrictions. (*Id*.)

In July 2014, after complaining of shoulder and neck pain and a tingling sensation into his fingertips, Plaintiff was diagnosed with bilateral shoulder pain, and neck pain with positive radiculopathy symptoms going to both hands. (Tr. 279.) In August 2014, an electrodiagnostic study revealed Plaintiff had chronic demyelinating mononeuropathy of the left ulnar nerve and chronic left C8-T1 radiculopathy. (Tr. 284.) Peter Yongclas, M.D. ("Dr. Yongclas") diagnosed Plaintiff with bilateral rotator cuff tendinopathy, bilateral bicipital tendinopathy, and myofascial pain with no active trigger points. (Tr. 285)

In September 2014, x-rays of Plaintiff's cervical and lumbar spine revealed degenerative disc disease. (Tr. 286.) On November 14, 2014, an MRI of Plaintiff's cervical spine showed a central to left neural foramina disc osteophyte complex that caused mild spinal stenosis and mild atrophy. (Tr. 288.) A January 9, 2015 MRI of Plaintiff's lumbar spine revealed multi-level degenerative changes causing mild spinal stenosis and a small disc protrusion, likely representing a cyst. (Tr. 291.)

### 3. Function Report

On October 23, 2013, Plaintiff submitted a function report listing his daily activities, which included reading, watching television, preparing meals, and walking. (Tr. 225, 227-29.) He indicated that he goes outside independently and shops for groceries every two weeks or more. (Tr. 227-28.) He alleged having trouble dressing, toileting, lifting, walking, sitting, stair climbing, using his hands, bending, kneeling, standing, and reaching. (Tr. 226, 229-30.) He also indicated that he sometimes uses a cane. (Tr. 231.) He does not have trouble paying attention, finishing

what he starts, following instructions, handling stress, and handling changes in his routine. (Tr. 230-31.)

### 4. Hearing Testimony

ALJ Olarsch conducted a hearing on June 1, 2016, during which Plaintiff and VE Wilson testified. (Tr. 40-69.) At the hearing, Plaintiff testified that he traveled to the hearing alone on public transportation. (Tr. 43.) He had a driver's license but let it expire because he no longer needed it. (Tr. 43.) He last worked in Puerto Rico but had to leave his job because he could no longer physically perform his job duties. (Tr. 44.) He reported pain throughout his entire back, limited range of motion in his neck, and shoulder pain. (Tr. 50-52.) Plaintiff stated that he is "out of breath" after walking half a block. (Tr. 50-51.) He uses a cane when he knows he has to walk more than a block. (Tr. 52-53.) He also alleged numbness in his hands and trouble gripping objects. (Tr. 50, 53, 55-56.) He reported difficulty climbing stairs and dressing himself. (Tr. 58.) A neighbor helps him with chores and cooking. (Tr. 54, 57.) Plaintiff testified that he takes pain medication, but it does not help. (Tr. 52.)

VE Wilson testified that according to the Dictionary of Occupational Titles, the job of security guard is semiskilled work requiring light exertion. (Tr. 64.) VE Wilson stated that an individual with Plaintiff's education, training, and work experience, who could perform a full range of light work, occasional postural maneuvers, and frequent head turning from side to side could perform Plaintiff's past relevant work. (*Id.*) Further, VE Wilson stated that an individual requiring a sit-stand option or is limited to only occasional head turning could also perform Plaintiff's past relevant work. (Tr. 64-65.)

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). However, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Id.* (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence she

accepts and which she rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

**B. The Five-Step Disability Test**

42 U.S.C. § 1382 governs a claimant's eligibility for social security benefits. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity due to any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do her previous work but [unable], considering her age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not

disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in §§ 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rules ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the "Listing of Impairments" in 20 C.F.R. Part 404, Subpart P, App. 1, 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual

functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant can perform past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant can do any other work, considering RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**III.    DISCUSSION**

In his decision dated November 11, 2016, ALJ Olarsch correctly applied the five-step disability test before determining that Plaintiff was not disabled. (Tr. 20-34.) The ALJ's findings are supported by substantial credible evidence, and there is no basis for remand or reversal because he appropriately considered all of Plaintiff's medically supported complaints as evidenced by his consultative visits and medical treatment.

At step one of the five-step test, ALJ Olarsch determined that Plaintiff had not engaged in substantial gainful activity as of the alleged onset of his disability. (Tr. 25); *see also* 20 C.F.R. §§ 404.1571 *et seq*. At step two, the ALJ found that Plaintiff suffered from degenerative disc disease of the cervical spine with radiculopathy and degenerative disc disease of the lumbar spine, both of which he classified as severe, medically-determinable impairments, that when considered either individually or in unison, significantly limits Plaintiff's mental and physical abilities to do basic work activities. (Tr. 26); *see also* 20 C.F.R. § 404.1520(c). Thus, the severity of Plaintiff's impairments warranted proceeding to the next step of the sequential evaluation process.

At step three, however, ALJ Olarsch found that the Plaintiff's impairments do not meet or medically equal the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 26.) The ALJ compared Plaintiff's impairments with those listed in §§ 1.02 and 1.04.[2] (*Id.*)

In considering § 1.02, the ALJ found that there was no documented evidence of any major dysfunction of a joint that resulted in an inability to ambulate or perform fine and gross movements effectively. (*Id.*) ALJ Olarsch noted that despite Plaintiff's history of mononeuropathy and

---

[2] Section 1.02 addresses major dysfunction of a joint and § 1.04 addresses disorders of the spine.

10

radiculopathy, he was still able to perform activities of daily living, such as household chores, preparing meals, grocery shopping, and traveling independently. (*Id*.)

Similarly, in considering § 1.04, ALJ Olarsch determined that Plaintiff's degenerative disc disease of his cervical spine was not of sufficient severity based on the listed criteria. 20 C.F.R. 404, Subpart P, Appendix 1. Listing § 1.04 requires that the claimant show a disorder of the spine resulting in compromise of a nerve root or the spinal cord. *Id.* Additionally, the claimant must show that this disorder results in a compression of a nerve root with loss of spinal motion, motor loss, and positive straight-leg raising studies. *Id*. Alternatively, the listing may be met with a showing of either documented spinal arachnoiditis manifested by severe burning or painful dysesthesia, or lumbar spinal stenosis resulting in pseudoclaudication, and inability to ambulate effectively. *Id.* The ALJ found no evidence in the record documenting any of the required diagnoses for disorders of the spine as described in listing § 1.04. (Tr. 27.)

Before undergoing the analysis in step four, ALJ Olarsch followed the proper two-step process to determine Plaintiff's RFC. (Tr. 28-33.) At the first step, the ALJ found that Plaintiff's medically-determinable impairments could reasonably be expected to cause his alleged symptoms. (Tr. 28.) However, at the second step, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.*) After carefully considering the evidence, ALJ Olarsch found that Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with a few exceptions. (Tr. 27.) He could occasionally climb ramps and stairs, balance, kneel, stoop, crouch and crawl, but should never climb ladders, ropes or scaffolds. (*Id.*) He also could frequently turn his head from side to side. (*Id.*)

In reaching this RFC determination, the ALJ found that the objective medical evidence and opinion evidence, in conjunction with Plaintiff's reported daily activities, and over-the-counter medication regimen did not support an alleged inability to perform work at a light exertional level. (Tr. 27, 31-32.) In his decision, the ALJ referred extensively to Plaintiff's diagnostic tests, and Drs. Yongclas, Potashnik, and Fernando's examinations. (Tr. 31, 265-71, 272-76, 279-89.) He gave great weight to the medical opinions of Disability Determination Services' medical consultants, who found that Plaintiff had the RFC to perform light work. (Tr. 27, 33, 71-102.) Although Plaintiff's MRI and EMG reports documented cervical radiculopathy and multi-level degenerative changes causing mild spinal stenosis and disc protrusion, the ALJ did not find any clinical correlation to findings of radicular symptoms or deficits of strength, sensation, or reflex. (Tr. 31.) The ALJ noted that during all of Plaintiff's physical examinations, he ambulated normally without an assistive device. (Tr. 31.) Furthermore, the ALJ found that Plaintiff's treatment was "solely conservative in nature," and that Plaintiff was able to take care of his hygiene and grooming needs, prepare his meals, exercise daily, and shop for food independently. (Tr. 31-32.) Thus, ALJ Olarsch concluded that while Plaintiff may experience some degree of lower back, neck, and shoulder discomfort, there was no objective basis to find that these disorders were in any way debilitating or preclusive of all work activity. (Tr. 32.)

Given Plaintiff's RFC, the ALJ determined at step four that Plaintiff could perform his prior work as a security guard. (Tr. 33.) It is clear that ALJ Olarsch considered VE Wilson's testimony in making this determination. (Tr. 33, 65-68.) Since the ALJ determined at step four that the claimant was not disabled, he was not required to proceed to the fifth step of the disability test. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

On appeal, Plaintiff focuses on the ALJ's evaluation of his manipulative complaints and

argues that ALJ Olarsch: 1) erred in finding Plaintiff's chronic demyelinating mononeuropathy of the left ulnar was non-severe; 2) failed to consider and explain his reasons for discounting evidence regarding Plaintiff's upper-extremity impairments and cervical radiculopathy; and 3) did not accurately account for all of Plaintiff's limitations in his hypothetical question to VE Wilson. (Pl.'s Br. 13-18, ECF No. 12.) This Court considers the arguments in turn and finds them each without merit.

Although ALJ Olarsch did not list chronic demyelinating mononeuropathy as a severe impairment, the Third Circuit has held that when an ALJ finds in favor of a claimant at step two, "even if the ALJ had erroneously concluded that some of the Plaintiff's other impairments were not severe, any error would be harmless." *Salles v. Comm'r Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2006). At step two, ALJ Olarsch found that Plaintiff's degenerative disc disease of the cervical spine with radiculopathy and degenerative disc disease of the lumbar spine were both severe impairments. Thus, even if he should have found the mononeuropathy to be a severe impairment, this would amount to harmless error.

Despite Plaintiff's contention that ALJ Olarsch improperly discounted evidence of Plaintiff's upper-extremity impairments and cervical radiculopathy, the record shows that the ALJ considered Plaintiff's subjective complaints in conjunction with the medical evidence. As the ultimate factfinder, the ALJ has the authority to reject a claimant's testimony as incredible, so long as he can explain his reasoning. *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007). As the ALJ explained, Plaintiff's medical records reflect that he had normal strength, and preserved range of motion in his arms. (Tr. 26, 29-30, 266, 270.) Plaintiff also had active range of motion in both shoulders, and full range of motion in his elbows, wrists, and fingers. (Tr. 29, 279.) There is no need to remand to include a medical issue that would not change the outcome,

especially when no treating or examining source found that Plaintiff was disabled or had greater limitations than assessed in the case.

Plaintiff also argues that the matter must be remanded because the ALJ's hypothetical question to VE Wilson did not include any manipulative restrictions. (Pl.'s Br. 17.) However, the ALJ is not required to include limitations that are not supported by the record. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (explaining that hypothetical questions are meant to "reflect all of a claimant's impairments that are supported by the record"). As ALJ Olarsch determined, "[a]lthough the assertions of pain and symptoms are reasonable to a degree, the overall record does not support them to the debilitating extent asserted." (Tr. 32.) Furthermore, this Court notes that Plaintiff was represented at the administrative hearing, and through his counsel, had the opportunity to pose questions to the vocational expert regarding manipulative limitations, but failed to do so. (Tr. 40, 65-68.) Based on the foregoing, remanding to include manipulative restrictions is neither necessary nor appropriate. Substantial credible evidence exists in the record to support ALJ Olarsch's findings.

## IV. <u>CONCLUSION</u>

Because this Court finds that ALJ Olarsch's factual findings were supported by substantial credible evidence in the record and that his legal conclusions were correct, the Commissioner's decision is **AFFIRMED**.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties